UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 2:20-CR-33 |
| | ) | |
| vs. | ) | |
| | ) | |
| JANMICHAEL VINCENT LINGO, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

Defendant has filed a Motion to suppress all evidence seized as a result of the search of

his residence located at 613 Montgomery Street, Johnson City, Tennessee. [Doc. 27]. The

United States filed a response in opposition to Defendant's motion [Doc. 33]. A hearing on

this motion was held before the undersigned on June 17, 2020**.** Present at the hearing were

Defendant and his counsel, Douglas Payne, Esq. and Assistant United States Attorney Robert

Reeves. The matter is before the Court pursuant to 28 U.S.C. § 636 and the standing orders of

the District Court. The matter is now ripe for resolution. For the reasons stated herein, the

undersigned **RECOMMENDS** that the Motion to Suppress [Doc. 27] be **DENIED**.

  I.     **Analysis**

Defendant argues that the search at issue is unconstitutional because the search warrant

was not supported by probable cause. Defendant asserts that the four corners of the search

warrant do not include a sufficient nexus between the facts known to the affiant and the

conclusion that evidence of a crime would be located at the 613 Montgomery Street residence.

It is Defendant's position that the affiant made a bare conclusion based on no factual support

and asserts that the good faith exception should not apply because a reasonable law enforcement officer would have known the search warrant was so facially deficient it could not be relied upon. The United States contends that the warrant, read in its entirety, is supported by probable cause and the resulting search was proper. In the alternative, the government argues that even if the search warrant affidavit lacked probable cause the good faith exception should apply because it was reasonable for the officers executing the search to rely upon the search warrant issued.

As to the specific ways Defendant claims probable cause was lacking, he states that there was insufficient proof to show that Defendant was involved in a crime in Chattanooga and insufficient evidence demonstrating that Defendant lived at 613 Montgomery Street.

### *Probable Cause*

When issuing a search warrant, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him… there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983) (internal quotations omitted). Probable cause is a fluid concept that depends upon the totality of the circumstances as opposed to an analysis of individual factors in isolation. *See District of Columbia v. Wesby*, 138 S. Ct. 577, 586-88 (2018). Probable cause is not a high standard and requires only "the kind of fair probability on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (quoting *Florida v. Harris*, 568 U.S. 237, 243-44 (2013) (internal quotation marks omitted)). However, there must be a nexus between the place to be searched and the evidence sought. *United States v. Frazier*,

423 F.3d 526, 532 (6th Cir. 2005). At the same time, "[r]easonable minds frequently may differ on the question [of] whether a particular affidavit establishes probable cause and [the Supreme Court has] thus concluded that the preference for warrants is most appropriately effectuated by affording great deference to a[n issuing] magistrate's determination." *United States v. Leon*, 486 U.S. 897, 914 (1984).

In the case at hand, the Affidavit provides information about Xavier Oliver's murder, which occurred at 3401 Vinewood Drive in Chattanooga, Tennessee. The Affidavit states that in the course of the murder investigation, video footage was obtained from a Citgo Gas Station located near the murder scene and that the video showed that shortly before Mr. Oliver was murdered, he and Defendant were at the gas station at the same time. Additionally, the footage shows that the vehicle in which Defendant was a passenger turned in the direction where the murder occurred close in time to when a witness heard the shots fired that killed Mr. Oliver. That witness described seeing a vehicle matching the one in which Defendant was a passenger at the time of the murder.

The Affidavit goes on to say that through Facebook and a confidential informant known to the police, they were able to identify Defendant as the person seen in the video footage from Citgo. The same informant also placed Defendant in the Chattanooga area driving a white truck which was rented around the time of Mr. Oliver's murder. TBI agents then found that Defendant had rented a white Dodge Ram on the day of the murder, which he returned two days later. The Affidavit goes on to say that TBI agents were able to locate the last known address of Defendant and conducted surveillance at the address. They then observed Defendant leave the address and enter his vehicle.

Without question, the Affidavit could have been more artfully drafted. The most problematic aspects of the warrant are the fact that the Affiant does not say how she came to possess the information contained in the Affidavit to know that it is reliable; that the Affidavit does not say how the TBI determined the address at issue was Defendant's address; and that there is no information in the warrant about whether the confidential informant has provided reliable information to officers previously but merely states the informant is known to law enforcement. Defendant alleges that there are additional problems with the Affidavit because he contends that the Court should ignore this information contained only in the jurat; however, the jurat is located within Affidavit and Defendant provides no legal support for his contention.

An affiant must speak with personal knowledge of the facts which are alleged to provide probable cause. *See Giordenello v. United States*, 78 S.Ct. 1245, 1250 (1958). In her Affidavit, Investigator Toma Sparks of the Johnson City Police Department states that she is making the affidavit "pursuant to an official criminal investigation…" and goes on to describe work performed by the Chattanooga Police Department and the TBI but Investigator Sparks does not state how she came to possess this information. [Doc. 27-1, 3-4]. Investigator Sparks does state that the Affidavit "does not set forth all of [her] knowledge about this matter." If that statement is turned on its head, it could be read to mean that what she does set forth in the Affidavit is based upon personal knowledge, but again, she does not indicate how she came to possess that knowledge. *Id.* at 3. The only reference in the Affidavit to the work of her police department is her statement that the Johnson City Police Department was involved in Defendant's traffic stop. *Id.* at 4. Investigator Sparks' failure to specifically state how she came to possess the information in the Affidavit at issue and how she knows it to be reliable is troubling.

The Affidavit merely states that "TBI Agents located the last known address of Mr. Lingo" but does not indicate what mechanism they used for doing so nor why they found the information used to be reliable. [Doc 27-1, p. 4]. Of some comfort is the fact that agents surveilled Defendant at this location and observed him leave a residence on the property. *Id.* Still, the omitted information was important in determining whether there was probable cause to believe that this was indeed a residence over which Defendant had an appropriate level of legal control.

The Court is also troubled by the reference in the Affidavit to reliance on a confidential informant to identify Defendant because the Affidavit contains no information as to why officers found the informant's information reliable; however, the Affidavit also states that officers used Facebook to determine that Defendant was the person seen on video surveillance. This independent verification is sufficient to address the identification issue in this particular instance. *See U.S. v. Allen,* 211 F.3d 970, 975 (6th Cir. 2000).

### *Good Faith Exception*

While the deficiencies in the Affidavit supporting the search warrant may fall just short of establishing probable cause, the Court finds that the good faith exception to the exclusionary rule operates to "save" the search and permit the admission of any evidence seized during the search. The good faith exception allows the admission of "evidence seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Frazier*, 423 F.3d at 533 (quoting *Leon*, 486 U.S. at 905 (internal quotation marks omitted)). The issuance of a search warrant by a magistrate "normally suffices to establish that a law enforcement officer acted in good faith in conducting the search." *Id.* In further assessing whether the officer indeed acted in good faith, the "inquiry is confined to the objectively

ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* The good faith exception will not apply when 1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit is so lacking in probable cause that official reliance upon it is entirely unreasonable; or 4) the officer's reliance on the warrant was neither in good faith or objectively reasonable. *Id.*

Here, the Affidavit contained a clear line of reasoning as to why Defendant was thought to have been involved in the murder of Xavier Oliver in Chattanooga, and there is no indication that the information included was false. The Exhibit to the Affidavit included a photograph of Defendant taken from video surveillance at a convenience store near the crime scene where both Defendant and Mr. Oliver had been shortly prior to Mr. Oliver's death. The Affidavit also included facts demonstrating that Defendant had been in possession of a vehicle matching the description of one seen right before the murder traveling down the road where Mr. Oliver's body was found. Additionally, the Affidavit stated that Defendant had been positively identified from the video footage, and that the TBI had found Defendant's last known address to be in Johnson City.  The Affidavit specifically identified that address in the Affidavit's jurat, and the Court takes no issue with the location being set forth in that location. Lastly, the Affidavit states that TBI Agents specifically observed Defendant leaving the residence located at that address.

It was reasonable to think that if Defendant had been involved in Mr. Oliver's murder Defendant's clothing might contain evidence related to the murder, and those clothes would likely be found in Defendant's home. It was also reasonable to think that Defendant might have other evidence relevant to the crime at his home, such as a murder weapon.

While the Court finds it to be a close call as to whether the search warrant establishes probable cause on its face, the Court cannot find that even a well-trained officer would have been likely to have recognized such deficiencies. Moreover, the search warrant was issued by a well-respected State of Tennessee Circuit Court Judge which would add to the reasonableness of officers' reliance on the validity of the warrant, and there is no evidence that the issuing judge "wholly abandoned her role" of assessing probable cause.

## II.      Conclusion

For the reasons outlined above, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 27] be **DENIED**. [1]

Respectfully Submitted,

/s Cynthia Richardson Wyrick
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be served and filed within **fourteen (14) days** after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).