UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JANMICHAEL VINCENT LINGO, ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | No. 2:23-CV-00035-JRG-CRW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Respondent*. ) | |

## MEMORANDUM OPINION

This matter is before the Court on Petitioner Janmichael Vincent Lingo's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 [Doc. 1]; the United States's Response [Doc. 4]; and Mr. Lingo's Reply [Doc. 6].[1] As discussed below, the motion will be **DENIED** and the § 2255 case will be **DISMISSED with PREJUDICE**.

### I. BACKGROUND

#### A. Criminal Case

In 2020, a federal grand jury indicted Mr. Lingo on multiple drug trafficking and firearms offenses. [Second Superseding Indictment, Doc. 73]. With the assistance of his appointed counsel, Mr. Douglas Payne, Mr. Lingo negotiated a Rule 11(c)(1)(C) plea agreement, under which he would plead guilty to one count of conspiracy to distribute fifty grams or more of methamphetamine and be sentenced to 188 months in prison. [Plea Agreement, Doc. 105]. As conditions of this agreement, Mr. Lingo waived the right to appeal his conviction or sentence[2] and

---

[1] All subsequent ECF document numbers refer to the criminal case, No. 2:20-CR-00033.

[2] Boilerplate language in the amended plea agreement allowed for an exception to the appeal waiver if a sentence was imposed in excess of the guideline range or mandatory minimum, whichever was greater. But that exception would not have applied because this was a Rule 11(c)(1)(C) plea agreement, whereby Mr. Lingo would be sentenced to the bottom of his guideline range. *See Freeman v. United States*, 564 U.S. 522, 535 (2011) (finding that under

the right to collaterally attack his sentence, with the exception of a challenge based on ineffective assistance of counsel or prosecutorial misconduct. [*Id.* ¶ 10].

On August 9, 2021, Mr. Lingo formally entered his plea of guilty to conspiracy to distribute fifty grams or more of methamphetamine. [Plea Hrg., Doc. 163 at 2]. The Court took the plea agreement under advisement, pending review of the Presentence Investigation Report ("PSR"). [*Id.* at 22–23].

After pleading guilty, but before sentencing, Mr. Lingo became dissatisfied with the services of Mr. Payne. The Court allowed Mr. Payne to withdraw as counsel and appointed Mr. Bryce McKenzie to represent Mr. Lingo. [*See* Mot. Withdraw, Doc. 115; Order, Doc. 121]. Mr. McKenzie filed an objection to the PSR that resulted in the bottom of Mr. Lingo's guideline range being lowered to 166 months [PSR Objs., Doc. 145; Second Add. to PSR, Doc. 146]. Mr. McKenzie then renegotiated Mr. Lingo's plea agreement, so that the agreed upon sentence was 166 months, instead of 188. [Amended Plea Agreement, Doc. 148 ¶ 6]. All other terms of the amended plea agreement, including appeal waivers, remained the same.

On April 4, 2021, Mr. Lingo appeared before the Court for sentencing, represented by Mr. McKenzie. At the beginning of the hearing, the Court asked Mr. Lingo if he had reviewed the amended plea agreement with his attorney and understood all the terms and conditions. [Sent. Tr., Doc. 164 at 3–4]. Mr. Lingo responded, "Yes, sir" to these questions. [*Id.* at 3–4]. The Court then asked Mr. Lingo if he had fully reviewed the PSR and PSR addenda with his attorney. [*Id.* at 6–7]. Mr. Lingo again responded, "Yes, sir." [*Id.*]. There being no objections, the Court adopted the PSR, which provided for an advisory guideline range of 168 to 210 months. [*Id.* at 7]. After hearing from the attorneys, the Court expressed concern about accepting the amended plea

---

Rule 11(c)(1)(C), "[t]he court may only accept or reject the agreement, and if it chooses to accept it, at sentencing the court may only impose the term of imprisonment the agreement calls for; the court may not change its terms.").

agreement, since based on the stipulated facts, it appeared that Mr. Lingo was a significant trafficker in drugs. [*Id.* at 13]. The Court's concern was heightened by letters Mr. Lingo had submitted to the Court, which seemed to contradict his sworn testimony at the change of plea hearing.[3] [Sent. Tr. at 13; *see also* Letters, Docs. 142, 143]. However, after questioning Mr. Lingo further, and considering the relevant sentencing factors, the Court accepted Mr. Lingo's amended plea agreement and sentenced him to the agreed-upon term of 166 months' imprisonment. [Sent. Tr. at 21–22]. After pronouncing sentence, the Court informed Mr. Lingo that he had the right to appeal and that a notice of appeal must be filed within fourteen days of the entry of the Judgment. [*Id.* at 26].

The Judgment entered on April 12, 2022. [J., Doc. 152]. A timely notice of appeal was not filed.

    **B.**    **§ 2255 Proceedings**

        **1.**    **§ 2255 Petition**

Mr. Lingo subsequently filed a timely § 2255 motion, alleging that Mr. McKenzie provided ineffective assistance of counsel by failing to "file timely direct appeal as requested at sentencing hearing." [Pet'r's Mot. at 4]. Mr. Lingo's motion provided no additional detail in support of this claim. In its response, the United States disputed whether Mr. Lingo had actually requested an appeal and asserted that there was no basis for one. [United States's Resp. at 4–5]. Mr. Lingo filed a reply, maintaining that the Court should enter judgment in his favor. [Pet'r's Reply].

---

[3] In particular, the Court was troubled by the fact that in one of the letters, Mr. Lingo claimed that he never possessed a single gram of methamphetamine, characterized his behavior as a "few mistakes," and requested immediate release. [Sent. Tr. at 13]. When asked to clarify these statements, Mr. Lingo asserted that his purpose in writing the letters was for the Court to "see [him] as a person," and that he requested immediate release because he had "changed" and was "focusing [himself] in a better direction." [*Id.* at 14]. Mr. Lingo assured the Court that even though he had requested immediate release, he understood that if the Court accepted the amended plea agreement, he would be sentenced to a term of 168 months. [*Id.*].

## 2. Evidentiary Hearing

The Court held an evidentiary hearing on Mr. Lingo's § 2255 motion on November 3, 2025.[4] At the hearing, Mr. Lingo was represented by appointed counsel, Mr. Casey Sears. The Court heard testimony from Mr. Lingo and Mr. McKenzie.[5]

### a. Mr. Lingo's Testimony

Mr. Lingo testified that on April 4, 2022, before his sentencing hearing, he met with Mr. McKenzie in the attorney room downstairs from the courtroom. Mr. Lingo did not ask for an appeal at that point because he "wasn't too privy to it." At counsel table, Mr. McKenzie brought up the subject of an appeal and Mr. Lingo said he "wanted one." Mr. McKenzie said that they would talk about an appeal after sentencing. Ten to fifteen minutes after the sentencing hearing was over, Mr. McKenzie came downstairs to check on Mr. Lingo, and Mr. Lingo asked more questions about the process for appealing. Mr. Lingo wanted to appeal the drug purity and quantity, but did not tell Mr. McKenzie this until after the sentencing hearing. Mr. McKenzie said he would file the notice of appeal, that it was an easy thing to do, and he would be in touch. Because Mr. Lingo did not know how long the process would take, he "just waited until he heard something."

After sentencing, Mr. Lingo was held in the Washington County jail for about a month. It was difficult to use the phone due to being in lockdown most of the time. Then he was moved around to several other locations before arriving at FCI Memphis. Once at FCI Memphis, Mr. Lingo was able to make a free attorney call to Mr. McKenzie's office and spoke with one of Mr.

---

[4] A transcript of the evidentiary hearing is on file with the Court.

[5] At the beginning of the hearing, Mr. Sears asked for a continuance on the grounds that he had a couple of witnesses who had been unable to make it to court. He proffered that the witnesses would testify that they called Mr. McKenzie's office at Mr. Lingo's request to check on the appeal. The Court took the matter under advisement until after the testimony of Mr. Lingo and Mr. McKenzie. After those witnesses testified, Mr. Sears withdrew his request for a continuance.

4

McKenzie's assistants. Mr. Lingo asked the assistant to send him his paperwork (sentencing transcripts, docket sheet, and plea agreement), which he later received while staying at FCI Memphis. He also inquired about the status of his appeal, but the assistant said she "wasn't really privy to that."

Following that phone call, Mr. Lingo called Mr. McKenzie's office "a lot," "maybe sixteen, seventeen, eighteen times," and spoke to two assistants, one male and one female. When the assistants answered the phone, they would just say, "Hello." Then Mr. Lingo would say he was checking on his appeal, and the assistant would promise to leave a message for Mr. McKenzie. These phone calls occurred around ten or eleven in the morning. Mr. Lingo never called Mr. McKenzie after hours and he always spoke with an assistant, never leaving a voicemail. In addition to making his own calls, Mr. Lingo also contacted his people and asked them to check constantly on the status of the appeal. The people who called Mr. McKenzie's office the most were his mom, Latonya Cole; the mother of his two daughters, Nicole Pick; and his godmother, Gwendolyn Smith. Mr. Lingo's mother called two or three hundred times. However, she and the other people who called on Mr. Lingo's behalf were unable to reach Mr. McKenzie or find out the status of the appeal.[6]

Eight or nine months before the evidentiary hearing, Mr. Lingo called Mr. McKenzie's office and obtained the phone number for the Clerk's Office. Mr. Lingo spoke with a clerk, whose name he does not remember, and asked if a notice of appeal had been filed in his case. The clerk

---

[6] During cross examination, the United States introduced a recording of a jail call between Mr. Lingo and his co-defendant, Ms. Braxton Gaitor. Mr. Lingo placed the call while he was being held at the jail in Laurel County, Kentucky, awaiting the evidentiary hearing in this case. In the call, Mr. Lingo said he had "a good chance to beat it" and that he was going to have witnesses that would say they called Mr. McKenzie's office several times about Mr. Lingo's appeal. When questioned about the phone call, Mr. Lingo said he was just telling Ms. Gaitor that there was a chance the Court would want to hear from his people about all the calls they had made to Mr. McKenzie's office.

5

said that Mr. Lingo had an appeal that was "docketed on [the Court's] desk." Mr. Lingo thinks the clerk was referring to his § 2255 petition.

### b. Mr. McKenzie's Testimony

Mr. McKenzie testified that he is a partner in the law firm of Delius & McKenzie, in Sevierville, Tennessee. After reviewing Mr. Lingo's casefile in preparation for the evidentiary hearing, Mr. McKenzie recalled that Mr. Lingo had become displeased with his previous counsel after entering into an 11(c)(1)(C) plea agreement. He also recalled filing objections to the PSR that lowered Mr. Lingo's sentencing range and renegotiating Mr. Lingo's plea agreement.

Although Mr. McKenzie did not recall meeting with Mr. Lingo on the date of sentencing, his contemporaneous time log—which he referenced during his testimony—included the notation, "meet with client, speak with AUSA and wait for hearing to start" within one billing entry. The billing entry did not specify where the meeting took place, but it could have been at counsel table or Mr. McKenzie may have gone to the marshal's office. It is not Mr. McKenzie's customary practice to meet with clients after sentencing. Mr. McKenzie does not recall Mr. Lingo expressing an interest in an appeal on the date of sentencing or at any time thereafter. However, if Mr. Lingo had asked him to file a notice of appeal, Mr. McKenzie would have done so. Mr. McKenzie is familiar with the "relatively straightforward" process for filing a notice of appeal, and has extensive experience with appeals in state court, which is a substantially similar process to that in federal court.

On April 11, 2022, a week after the sentencing hearing, Mr. McKenzie sent Mr. Lingo a closing letter. Mr. McKenzie usually closes his billing log after reviewing the final judgment and then sends a closing letter. It is not his usual practice to send a closing letter if a client has a pending appeal.

6

Mr. McKenzie explained the customary practice for receiving phone calls at his office. His firm has one phone line that rings directly to one of two assistants. The assistants answer the phone during business hours, with the greeting, "Delius & McKenzie." If a call comes in for Mr. McKenzie, his staff sends him a message through the Microsoft Teams online business chat system, telling him who called. Microsoft Teams messages are saved and searchable. If an assistant is unable to reach the phone in time, the call goes to a general voice mail. The voicemail recording is automatically sent in an email to an assistant who then forwards the message to the appropriate attorney.

In preparation for the hearing, Mr. McKenzie searched his Microsoft Teams and voicemail messages from April 4, 2022, to the present. That search revealed only one communication concerning Mr. Lingo, a Microsoft Teams message from July 24, 2025, where someone had requested that Mr. Lingo's PSR information be sent to an address in Chattanooga. Due to the confidential nature of a PSR, Mr. McKenzie did not have his assistants send the information. During cross examination, Mr. McKenzie was asked why there was no record of Mr. Lingo's call, requesting that his paperwork be sent to him at FCI Memphis. Mr. McKenzie explained that there might not be a record because his staff does not need to inform him before sending a client their paperwork in jail. However, his assistants would inform him if a client called regarding a specific appeal.

The Court questioned Mr. McKenzie to clarify whether he would follow a client's instruction to file a notice of appeal, even when there is an appellate waiver. Mr. McKenzie stated, "Absolutely. I certainly understand that that is something required of me, even if I believe it would be legally not valid."

After the witnesses testified, the Court took the matter under advisement.

7

## II. DISCUSSION

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b).

A petitioner claiming ineffective assistance of counsel may obtain relief under § 2255 by establishing that his attorney's performance was so inadequate as to violate his Sixth Amendment rights. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Usually, to meet this standard, a petitioner must satisfy the two-part *Strickland* test, which requires a showing of both deficient performance and prejudice. *Id.* at 688, 694. However, "[t]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a per se violation of the Sixth Amendment." *Ludwig v. United States*, 162 F.3d 456 (6th Cir. 1998); *see also Pola v. United States*, 778 F.3d 525, 533 (6th Cir. 2015) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)) ("An attorney performs deficiently if, after consulting with his client, he disregards specific instructions from his client to file a notice of appeal—a purely ministerial task.") (cleaned up). Thus, if counsel fails to file a direct appeal upon request, a defendant is entitled to a delayed appeal without having to show any likelihood of success on the merits. *Flores-Ortega*, 528 U.S. at 477.

After hearing the testimony offered during the evidentiary hearing and observing the witnesses as they testified, the Court finds that Mr. Lingo has not established that he asked counsel to file a notice of appeal. Three factors lead the Court to this conclusion.

8

First, Mr. McKenzie has no recollection of Mr. Lingo asking him to file a notice of appeal. And the Court credits Mr. McKenzie's assertion that he would have filed the notice, if Mr. Lingo had asked him to do so. Mr. McKenzie made clear in his testimony that he understands his obligation to file a notice of appeal even when, as here, the defendant's plea agreement contains appeal waivers. Mr. McKenzie is familiar with the process for filing an appeal. And it seems unlikely he would forget to file a notice of appeal if, as Mr. Lingo claims, he made the request twice, both before and after sentencing. Moreover, Mr. McKenzie sent Mr. Lingo a closing letter a week after the sentencing hearing, and it is not his usual practice to send a closing letter if there is a pending appeal.

Second, the Court did not find Mr. Lingo's testimony to be credible. According to Mr. Lingo, he had already decided to appeal the conviction and/or sentence that he agreed to in his Rule 11(c)(1)(C) plea agreement *before* the hearing even began. The Court expresses no opinion on what would have occurred had Mr. Lingo attempted to renege on his plea agreement at the sentencing hearing. But if he were having second thoughts, Mr. Lingo had ample opportunity to voice those concerns when the Court spoke with him about his plea agreement at the beginning of the hearing and before pronouncing sentence. Further, Mr. Lingo's claim that he met with Mr. McKenzie ten to fifteen minutes after he was sentenced is inconsistent with Mr. McKenzie's regular practices. Mr. McKenzie testified that it is not his general practice to meet with clients after sentencing and he does not recall ever having done so. And Mr. Lingo's claim that he met with Mr. McKenzie before and after sentencing conflicts with Mr. McKenzie's contemporaneous billing log, which indicates that there was one meeting, which occurred before the sentencing hearing began.

9

Mr. Lingo's credibility is further called into question by the fact that there is no evidence of the numerous phone calls that Mr. Lingo claims were placed to Mr. McKenzie's office by himself, his mother, and others. Mr. McKenzie testified that when his office receives calls, they are documented in Microsoft Teams messages or sent to voicemail. Having searched his Microsoft Teams and voicemail messages from April 4, 2022, to the present, Mr. McKenzie found only one communication regarding Mr. Lingo. That was a third party request for a copy of Mr. Lingo's PSR from July 2025, which Mr. McKenzie denied based on privacy concerns. While it is possible that one or two phone calls received by Mr. McKenzie's assistants could have gone undocumented, it is not believable that Mr. McKenzie would have no record of the "sixteen, seventeen, eighteen" calls purportedly placed by Mr. Lingo or the two or three hundred calls purportedly placed by his mother. The Court also notes that despite claiming to have called Mr. McKenzie's office numerous times, Mr. Lingo could not accurately recall the greeting used by Mr. McKenzie's assistants, which is the name of the firm, "Delius & McKenzie," not "Hello," as Mr. Lingo testified.

Third, apart from his testimony, Mr. Lingo did not present any evidence to support his claim. In particular, the Court finds it significant that he apparently did not make any written communications to his attorney regarding a notice of appeal. And the Court did not receive any letters from Mr. Lingo inquiring about the status of an appeal, even though he has written letters to the Court in the past regarding his case. Indeed, Mr. Lingo testified that he did not call the Court to see if a notice of appeal had been filed until approximately eight months prior to the evidentiary hearing, which was after he filed his § 2255 petition.

In sum, although Mr. McKenzie lacked an independent recollection, he credibly testified that he would have filed a notice of appeal if Mr. Lingo had made that request; the Court did not find Mr. Lingo's testimony to be credible; and there is no other evidence to support Mr. Lingo's

version of events. Accordingly, the Court will deny Mr. Lingo's § 2255 petition. *See Moss v. United States*, 323 F.3d 445, 469–70 (6th Cir. 2003) (finding that district court properly denied ineffective assistance of counsel claim where the attorney lacked an independent recollection of events but testified credibly regarding his customary practices; the petitioner failed to present credible evidence; and the district court explicitly questioned the petitioner's credibility).

### III. CERTIFICATE OF APPEALABILITY

The Court must now determine whether to issue a certificate of appealability, which is necessary for Mr. Lingo to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing when a court has rejected a petitioner's constitutional claims on the merits, that petitioner must demonstrate that reasonable jurists would find the court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having addressed the merits of Mr. Lingo's claims, the Court does not conclude that reasonable jurists would find that its rejection of his claims is debatable or wrong. The Court will therefore decline to issue a certificate of appealability to Mr. Lingo.

### IV. CONCLUSION

For the reasons stated above, Mr. Lingo's § 2255 petition is **DENIED**, and this case is **DISMISSED with PREJUDICE**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE